## BRADY v. BERWIND–WHITE COAL–MIN. CO.

(Circuit Court of Appeals, Third Circuit. March 4, 1901.)

### No. 22.

**1. ALTERATION OF CONTRACTS—MATERIALITY.**

An alteration of a written contract for the sale of goods, which is silent concerning the place of delivery, by adding a provision that the delivery shall be to the carrier, is material when it prevents the vendee from proving a parol agreement that he should not be chargeable for the goods until he had actually received them.

**2. SAME—ADMISSIBILITY IN EVIDENCE.**

The fact that contracts made between the parties after a material alteration in a prior written contract were the same as the altered instrument is not a sufficient explanation of the alteration, so as to make the paper admissible in evidence.

**8. SAME—PROVISIONAL ADMISSION.**

The fact that an altered instrument has been admitted in evidence provisionally does not deprive the court of the power to exclude it later, thereby withdrawing from the jury the question whether the alteration was made before or after execution.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Suit by Tom G. Brady against the Berwind-White Coal-Mining Company. From a judgment for defendant, plaintiff brings error. Affirmed.

D. T. Watson and C. Berkeley Taylor, for plaintiff in error.

John G. Johnson and Henry C. Terry, for defendant in error.

Before GRAY, Circuit Judge, and McPHERSON and BRADFORD, District Judges.

J. B. McPHERSON, District Judge. This writ of error presents the single question whether a certain writing was properly withdrawn by the court from the consideration of the jury. The relevant facts are as follows: On May 15, 1894, A. O. Tinstman, an agent of the defendant company, agreed to buy from the plaintiff 350 cars of coal. Part of the agreement was embodied in the writing in controversy, which is in the form of an order:

> "**C. H. Lawrence, Broker.**
>
> "Fairmount, W. Va., May 15th, 1894.
>
> "C. H. Lawrence: You will please ship to Harsimus, Jersey City, N. J., for account Berwind-White Coal-Mining Company, of Philadelphia, three hundred and fifty cars of run of mine coal; same to be paid for at $1.45 per ton of 2,000 lbs.; shipment to average twenty cars per day, and to commence not later than May 16th, 1894.
>
> "[Signed] A. O. Tinstman."

The writing is silent concerning the time and manner of making payment and concerning the place of delivery. Without the knowledge or authority of the defendant, so far as appears, the plaintiff interlined the words, "f. o. b. cars at mine," after the figures "$1.45," and in this altered condition the writing was offered in evidence by the plaintiff. It was admitted provisionally by the learned circuit judge, but he reserved the right to decide finally the question of admissibility at a later stage of the case, and in the end he withdrew the writing from the jury after the testimony on both sides had been closed, upon the ground (as stated in the charge) that "it would not be possible for any jury to reasonably find from the evidence that the interlineation referred to was either made at the time of the execution or the delivery of the order of May 15, 1894, or was subsequently made known to Mr. Tinstman or to the defendants, and consented to by them or either of them." A fuller statement of the reasons that influenced the mind of the trial judge may be found in the following extract from his opinion upon the motion for a new trial, reported in 94 Fed. 28:

"When the original of this paper was offered in evidence, it appeared that the letters and words 'f. o. b. cars at mine' had been interlined. The defend-

ants therefore objected to its admission. The plaintiffs then claimed that the evidence theretofore presented and thereafter to be introduced would meet and overcome this objection. There being, however, no direct evidence adduced at any time in support of this position, the contention finally was that enough had been shown to at least warrant an inference that the interlineation had been made before execution, or, if made thereafter, that it had become known to, and was acquiesced in by, the defendant. I was not at all satisfied of this; but, deeming it inexpedient to immediately exclude the writing, I admitted it, with the expectation that the question as to whether the jury should be finally permitted to consider it might be more advisedly determined at a later stage of the trial. Upon further reflection, I became convinced that the paper should not have been admitted, and also that, upon all the evidence, a finding by the jury, if permitted and made, that the alteration in question had been either rightfully made, or had been subsequently accepted by the defendant, could not possibly be sustained. Accordingly, the defendant's motion to strike out the paper was granted, and the jury was instructed to regard it as being wholly out of the case."

We are now asked to say that the exclusion of the writing was erroneous, and we are urged by the plaintiff to take either of three positions: First, the alteration was immaterial; second, if material, it had been sufficiently accounted for; or, third, the paper having once been admitted, the judge should have submitted to the jury the question whether the alteration was made before signature. We do not think that either position is sound, under the facts in proof, or that either requires extended discussion. The first position is supported by the argument that, as the writing is silent concerning the place of delivery, the coal became the property of the defendant, by operation of law, upon delivery to the carrier; and, therefore, that the words interlined expressed no more than the law would have implied without them. This argument apparently overlooks the fact that the writing did not contain the whole agreement. Part of the contract was in parol, and concerning this part, which included the place of delivery, there was a dispute of fact. When the coal was to become the defendant's property was an important question, and the alteration was material because it bore directly upon this point. We cannot answer the argument better than by quoting a further extract from the opinion in 94 Fed., on page 29:

"Now, in the present case, a main subject of controversy was as to the place of delivery. The jury were instructed that, in the absence of contract to the contrary, the coal became the property of the defendant when shipped for transportation; and neither party questioned the correctness of this statement of the law. But the defendant had adduced evidence to show that the actual agreement was that it was not to be chargeable for the coal until it had actually received it, and this, of course, the defendant would have been precluded from doing if the phrase, 'f. o. b. cars at mine,' had been regularly comprised in the paper, inasmuch as the express terms of an instrument of writing may not be varied by oral proof. Therefore, under the cases cited, the materiality of the interlined words seems to be entirely plain."

To the second position it is enough to say that we do not find in the evidence a sufficient explanation of the alteration. The fact that in contracts afterwards made between the same parties other coal was bought "f. o. b. at mine," or even the fact that the coal bought under the order of May 15th was paid for by the defendant "f. o. b. at mine," does not account for the alteration so as to make the paper

an admissible instrument of evidence. Even if the contract did in fact include the parol term that the coal was sold "f. o. b. at mine," this does not answer the question, how did the paper come to be altered in a material manner? The paper itself would still be inadmissible, because the change was unauthorized, and because the effect of the change would be either to make the plaintiff's case easier of proof, or to make the defendant's case more difficult of proof. It must be borne in mind that the question before the trial judge was merely the inadmissibility of the paper in order to prove the contract; and, this being so, we do not think that he could properly decide that question by taking into account the terms of the contract, as by other testimony they might have been made to appear. The exclusion of the paper merely deprived the plaintiff of one means of proving his case. He was at liberty to prove it otherwise if the evidence was at his command. For example, we see no reason why he might not have properly asked for an instruction that, as the defendant had paid for the coal "f. o. b. cars at mine," the jury might infer from such payment that the place of delivery was upon the cars. If they drew that inference, one term of the contract would thus have been proved; and so with other terms concerning which there may have been relevant evidence outside the paper in controversy. But, manifestly, such evidence bears upon the existence and scope of the contract, and does not offer any explanation or excuse for the alteration of a writing by which it was proposed to make a part of the contract evident.

The third position needs only a word in reply. Under the evidence the fact of alteration after signature scarcely admitted a doubt. Certainly no verdict that declared the change to have been made before signature could have been allowed to stand, and the trial judge was, therefore, only discharging a plain duty when he decided the question himself. The fact that he had once admitted the writing did not deprive him of the power to exclude it afterwards, especially as he had expressly reserved the right to take "any course that upon the conclusion of the case the court may deem it proper to take with respect to the paper."

The judgment is affirmed.